IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

STEVEN MCDOWELL LOWE,
Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
Defendant.

Civil No. 3:15cv230 (JAG)

REPORT AND RECOMMENDATION

On September 7, 2012, Steven McDowell Lowe ("Plaintiff") applied for Social Security Disability Benefits under the Social Security Act ("Act"), alleging disability from arthritis, depression, gout, degenerative disc disease, back and shoulder problems, and a hernia, with an alleged onset date of July 10, 2012. (R. at 218, 221.) The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in formulating Plaintiff's residual functional capacity ("RFC"), in assessing Plaintiff's credibility, and in posing an incomplete hypothetical to the vocational expert ("VE"). (Pl.'s Mem. in Support of Soc. Sec. App. ("Pl.'s Mem.")(ECF No. 12) at 1.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, making the matter now ripe

for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 11) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 13) be DENIED, and that the final decision of the Commissioner be REVERSED and REMANDED.

## I. PROCEDURAL HISTORY

On September 7, 2012, Plaintiff filed an application for DIB. (R. at 218.) The SSA denied these claims initially on March 12, 2013, and again upon reconsideration on August 14, 2013. (R. at 80-91, 93-108.) At Plaintiff's written request, the ALJ held a hearing on October 29, 2014. (R. at 30.) On December 9, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because Plaintiff could successfully adjust to work that exists in significant numbers in the national economy. (R. at 22.) On February 11, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1-4.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied the correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes all the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether a disability exists. 20 C.F.R. § 416.920(a)(4); *see also Mascio*, 780 F.3d at 634-45 (summarizing the ALJ's five step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment

listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). Then at step four, the ALJ assesses whether the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

III. THE ALJ'S DECISION

On October 9, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 30.) On December 9, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 22.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 9-22.) At step one, he found that Plaintiff had not engaged in substantial gainful activity since September 7, 2012. (R. at 11.) At step two, he found that Plaintiff had the following severe impairments: gout, degenerative disc disease, torn rotator cuff status post-surgical repair, pulmonary embolus, depression with symptoms of anxiety/generalized anxiety disorder and morbid obesity. (R. at 22.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. §§ 416.967(b), except that Plaintiff had the ability to frequently balance. (R. at 14.) Plaintiff could occasionally stoop, kneel, climb, crouch, crawl and perform overhead

reaching with his right upper extremity. (R. at 14.) Plaintiff could never climb ladders, ropes or scaffolding. (R. at 14.) With respect to his mental RFC, Plaintiff could use commonsense understanding to perform instructions provided in oral, written or diagrammatic form, consistent with a range of unskilled work at or below reasoning level three as defined in the Dictionary of Occupational Titles ("DOT"). (R. at 14.) He could occasionally work with the general public, supervisors and co-workers. (R. at 14.)

At step four, the ALJ found Plaintiff unable to perform any past relevant work. (R. at 20.) Finally, at step five, the ALJ found that Plaintiff could perform jobs that exist in the national economy. (R. at 21.) Specifically, the ALJ identified the jobs of investigator of dealer accounts, laminating machine operator and conveyor line baker worker. (R. at 21.) Therefore, Plaintiff had not suffered from a disability, as defined in the Act, since the application date of September 7, 2012. (R. at 22.)

## IV. ANALYSIS

Plaintiff, fifty years old at the time of this Report and Recommendation, previously worked as a general laborer and a maintenance employee/superintendent. (R. at 218, 227.) He applied for Social Security Benefits, alleging disability from arthritis, depression, gout, degenerative disc disease, back and shoulder problems, and a hernia, with an alleged onset date of July 10, 2012. (R. at 221.) Plaintiff's appeal to this Court alleges that the ALJ erred in failing to give Dr. Sheehan's opinion controlling weight, in assessing Plaintiff's credibility and in finding Plaintiff capable of performing existing work. (Pl.'s Mem. at 1.) For the reasons set forth below, the ALJ did not err in his assignment of weight or assessment of credibility, but did err in his hypothetical to the VE .

**A. Substantial Evidence supports the ALJ's decision to give Dr. Sheehan's opinions limited weight.**

Plaintiff alleges that Dr. Sheehan's opinions deserve controlling weight as the treating physician, and the ALJ's failure to do so constitutes reversible error. (Pl.'s Mem. at 10.) Defendant responds that the ALJ properly weighted Dr. Sheehan's opinions and substantial evidence supports that decision. (Def.'s Motion for Summary Judgment and Brief in Support Thereof ("Def.'s Mem.") (ECF No. 13) at 15.)

**i. Substantial evidence supports the ALJ's decision with respect to Dr. Sheehan's opinion of Plaintiff's physical limitations.**

Plaintiff first alleges that Dr. Sheehan's opinion of Plaintiff's physical limitations deserves controlling weight, because Dr. Sheehan was Plaintiff's treating physician. (Pl.'s Mem. at 13.) The ALJ assigned limited weight to Dr. Sheehan's physical assessments. (R. at 20.) Dr. Sheehan opined that Plaintiff could not physically work an eight-hour day, five days a week on a sustained basis. (R. at 330.) The ALJ, conversely, determined that Plaintiff could perform light work with some additional limitations. (R. at 14.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's provided medical records and any medical evidence resulting from consultative examinations or ordered medical expert evaluations. 20 C.F.R. §§ 404.1512(a)-(e), 404.1527, 416.912(a)-(e), 416.927. When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that support each other, then the ALJ makes a determination based on that evidence. 20

C.F.R. §§ 404.1520b(a), 416.920b(a). If, however, the medical opinions conflict internally with each other or other evidence, then the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (e), 416.927(c)(2)-(6), (e).

Under the regulations, the ALJ can only consider an "acceptable medical source" as a treating source that offers an opinion entitled to controlling weight. SSR 06-03p. Acceptable medical sources include licensed physicians, licensed or certified psychologists, and certain other specialists, depending on the claimed disability. 20 C.F.R. §§ 404.1527(a), 416.913(a). Under the applicable regulations and case law, the ALJ must give a treating source's opinion controlling weight if it enjoys support from medically acceptable clinical and laboratory diagnostic techniques and does not conflict with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant has a disability precluding him from employment (an issue reserved for the Commissioner), or when the treating source's opinion conflicts with other evidence or when the other evidence does not support it. 20 C.F.R. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up specious inconsistencies." *Dunn v. Colvin*, 607 Fed.Appx. 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should

remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d).

The ALJ must consider the following factors when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine the ultimate question of a claimant's disability as defined under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Here, the ALJ determined that Dr. Sheehan's opinion regarding Plaintiff's physical limitations lacked consistency with the longitudinal, grossly conservative treatment history, the documented clinical and examination findings, and Plaintiff's stated ongoing capabilities. (R. at 20.) Substantial evidence supports the ALJ's decision not to afford Dr. Sheehan's opinion controlling weight.

Plaintiff's treatment record supports the ALJ's decision to give Dr. Sheehan's opinion limited weight. From the outset, the ALJ noted that the record "documents a history of primary care treatment for the claimant's combined impairments and complaints of pain." (R. at 16.) Dr. Sheehan saw Plaintiff on an out-patient status for approximately fifteen minutes on most visits. (R. at 648, 656, 729, 736, 747, 756, 762, 769, 778, 787, 795, 803, 811, 817, 828, 836, 845, 852, 937.) Plaintiff generally retained full range of motion in his neck. (R. at 392, 498, 518, 534, 564, 677, 680, 685, 690, 890, 898, 908.) Additionally, his medical records revealed intact motor

exam, generally normal musculoskeletal range of motion, and no ongoing evidence of sensory or reflex loss. (R. at 392, 406, 413, 518, 534, 601, 658, 677, 737, 748, 770, 779, 796, 804, 805, 818, 829, 837, 846, 854, 875.) This suggests that Plaintiff's ability exceeded what Dr. Sheehan opined. The ALJ noted how Plaintiff's "musculoskeletal/neurological symptoms remained otherwise treated on an entirely conservative and outpatient basis, with no evidence of acute complications requiring hospitalization or further complication." (R. at 19.)

The ALJ also found Dr. Sheehan's opinion inconsistent with Plaintiff's stated abilities. Specifically, Plaintiff stated that he could take care of many personal needs, prepare microwave products, wash laundry, shop for groceries, count change, use a checkbook/money, watch programs, read the Bible and attend doctors' appointments. (R. at 19, 243-46, 253-54, 255-57, 295.)

The medical records documenting Plaintiff's conservative treatment and Plaintiff's stated abilities lack consistency with Dr. Sheehan's opinion. The ALJ adequately explained these inconsistencies. Therefore, substantial evidence supports the ALJ's decision not to afford controlling weight to Dr. Sheehan's opinion that Plaintiff could not physically work.

**ii. Substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Shaheen's opinion regarding Plaintiff's mental limitations.**

Plaintiff also alleges that the ALJ allocated inadequate weight to Dr. Shaheen's opinions of Plaintiff's mental limitations. (Pl.'s Mem. at 17.) Dr. Shaheen completed a mental capacity assessment and opined that Plaintiff had various limitations in his mental functioning. (R. at 671-73.) The ALJ gave this opinion little weight as it came from Plaintiff's primary care physician, not a mental health specialist. (R. at 20.) Furthermore, he found the severity of Dr. Sheehan's assessed restrictions inconsistent with the longitudinal conservative treatment history,

the documented clinical and examination findings, and Plaintiff's stated abilities. (R. at 20.) Defendant responds that substantial evidence supports the ALJ's decision to afford Dr. Sheehan's mental opinion only "limited" weight, and that Plaintiff could perform the wide range of unskilled work that his RFC defined. (Def.'s Mem. at 24.) Substantial evidence supports the ALJ's decision to afford limited weight to Dr. Sheehan's opinion of Plaintiff's mental limitations.

The opinion of the state agency psychiatrist supports the ALJ's decision. Howard S. Leizer, Ph.D completed a psychiatric review on August 14, 2013. (R. at 100-01.) Dr. Leizer found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, no difficulties maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (R. at 101.) These findings lack consistency with Dr. Sheehan's opinion, thereby supporting the ALJ's decision with regard to the weight given to Dr. Sheehan's opinion.

Furthermore, the underlying findings of Susan C. Belyea, Ph.D., a licensed clinical psychologist who performed a consultative psychological evaluation on August 10, 2014, support the ALJ's decision. (R. at 664-69.) During the mental status evaluation, Dr. Belyea found Plaintiff cooperative and willing to answer all questions without reservation. (R. at 668.) She also found him to have good reliability and excellent eye contact. (R. at 668.) Dr. Belyea further noted Plaintiff's speech as relevant and coherent with normal rate, rhythm, volume and amount. (R. at 668.) Plaintiff had spontaneous, linear, logical, and goal-directed thought processes. (R. at 668.) Additionally, Dr. Belyea found Plaintiff alert and oriented to time, place and the examiner. (R. at 668.) Finally, Dr. Belyea found Plaintiff's concentration and attention

abilities within normal limits at times, but he struggled to stay on track when asked more complex and detailed questions. (R. at 668.) Dr. Belyea assigned Plaintiff a global assessment of functioning ("GAF") score of 53, reflecting moderate overall limitations in functioning.[2] (R. at 668.) Despite these findings, Dr. Beylea ultimately opined that Plaintiff would have marked difficulties consistently meeting the requirements of a job. (R. at 669.) The ALJ afforded Dr. Beylea's ultimate opinion limited weight as it lacked consistency with her own clinical observations and Plaintiff's treatment history. (R. at 18.) These clinical observations also conflict with Dr. Sheehan's mental opinions, thereby undermining Dr. Sheehan's opinion as warranting controlling weight. 20 C.F.R. §§ 404.1527(c)-(e), 416.927(c)-(e).

Dr. Sheehan's specialization and treatment relationship with Plaintiff supports the ALJ's decision. When weighing a medical opinion, the ALJ considers the specializations of the medical source in addition to the nature and extent of the treatment relationship. 20 C.F.R. § 416.927(c). Here, Dr. Sheehan treated Plaintiff as his primary care physician, not as a mental health specialist. The ALJ properly considered this when discounting the weight given to Dr. Sheehan's mental opinions.

---

[2] The GAF represents a numeric scale (0 through 100) used by mental health clinicians and physicians to rate the social, occupational and psychological functioning of adults. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). Scores ranging from 51 to 60 indicate moderate symptoms or moderate difficulty in social, occupational or school functioning. *Id.* Notably, the latest version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") has dropped the use of GAF scores, finding that their use faces criticism due to a "conceptual lack of clarity," and "questionable psychometrics in routine practice." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013).

Because substantial evidence supports the ALJ's decision to assign limited weight to Dr. Sheehan's opinions of Plaintiff's physical and mental limitations, Plaintiff's first assignment of error fails.

**B. Substantial evidence supports the ALJ's credibility determinations.**

Plaintiff alleges that the ALJ failed to apply the appropriate legal standards in assessing his credibility. (Pl.'s Mem. at 22.) Specifically, the ALJ erred by failing to provide specific and adequate reasons for discrediting Plaintiff's statements about his use of a cane, attempts at obtaining relief through steroid injections, and use of handicapped license plates on his vehicle. (R. at 23.) The ALJ found the claimant's statements regarding the severity of his limitations not credible to the extent that they conflicted with the RFC, because they lacked support from the longitudinal conservative treatment history, the documented clinical and examination findings, and Plaintiff's stated ongoing capabilities. (R. at 19.) Defendant responds that substantial evidence supports the ALJ's credibility determination. (R. at 24.)

When assessing the claimant's RFC, the ALJ must incorporate the impairments supported by the objective medical evidence in the record and those impairments based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d 585, 594 (4th Cir. 1996); SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). At the first step, the ALJ determines the presence of an underlying medically determinable physical or mental impairment or impairments that could reasonably produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at 1-3. The ALJ must consider all of the medical evidence in the record. *Craig*, F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be

based on all of the relevant evidence in the case record."). If the underlying impairment could reasonably produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (reviewing an ALJ's credibility determination for substantial support). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exeptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems, Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, the Fourth Circuit has established that Plaintiff's subjective allegations of pain cannot alone provide conclusive evidence of a claimant's disability. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Instead, "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could

reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

In this case, the ALJ determined that Plaintiff's medically determinable impairments could foreseeably cause his alleged symptoms; however, Plaintiff's statements regarding the intensity, persistence and limiting effects lack credibility for the reasons detailed in the opinion. (R. at 19.) Ultimately, the ALJ diminished Plaintiff's credibility, because Plaintiff's statements lacked support from the treatment history, documented findings, and his stated activities. (R. at 19.) Substantial evidence supports the ALJ's decision.

Substantial evidence supports the ALJ's decision on the basis of his treatment history and documented findings. On November 22, 2011, an examination by Daniel McGee, M.D., revealed negative findings for myalgias, back pain, and arthralgias. (R. at 443.) Dr. McGee also found Plaintiff's cardiovascular and respiratory systems negative. (R. at 443.)

On August 22, 2012, Plaintiff visited Dr. Sheehan for neck and back pain. (R. at 391.) Dr. Sheehan found that although Plaintiff had tenderness in the paravertebral muscles, he exhibited a full range of motion in his neck. (R. at 392.) Plaintiff also had normal ranges of musculoskeletal motion and exhibited no edema. (R. at 392.) Cardiovascular and respiratory findings also yielded no abnormalities. (R. at 392.)

On September 17, 2012, Plaintiff presented to Katherine L. Ashwell, M.D., with pain in his lower right leg. (R. at 496.) A physical exam revealed right knee tenderness with a significantly limited range of motion secondary to pain. (R. at 498.) However, an x-ray revealed a normal right knee. (R. at 500.) Three views of the knee demonstrated no fracture, effusion or other osseous, articular or soft tissue abnormality. (R. at 500.) Plaintiff also exhibited no edema.

(R. at 498.) Plaintiff had full range of motion in his neck in addition to normal cardiovascular and pulmonary findings. (R. at 498.)

On September 19, 2013, Plaintiff presented to the emergency room with back and shoulder pain after a slip and fall. (R. at 896.) A physical exam revealed normal neck and musculoskeletal ranges of motion. (R. at 898.) Plaintiff had a hernia but otherwise normal findings. (R. at 898.) An x-ray demonstrated clear lungs, normal cardiac mediastinal countours and pulmonary vascularity with a slight degenerative spurring midthoracic spine. (R. at 899.) Discharged the same day, Plaintiff required only pain medication for treatment. (R. at 900.)

On November 18, 2013, Plaintiff visited the emergency room with knee pain. (R. at 888.) Michael M. Abaltzis, M.D., expressed concerns regarding Plaintiff's drug-seeking behavior. (R. at 888.) Dr. Abaltzis' physical examination of Plaintiff revealed normal musculoskeletal ranges of motion, no edema, and no tenderness. (R. at 890.) His right knee showed no swelling, effusion or erythema. (R. at 890.) The examination also demonstrated normal cardiovascular and pulmonary findings. (R. at 890.)

On April 14, 2014, Plaintiff had surgery performed by Matthew H. Blake, M.D., to repair his right shoulder rotator cuff. (R. at 925.) The surgery had no complications and Plaintiff tolerated it well. (R. at 930-31.) An April 24, 2014 visit to the emergency room for chest pain yielded unremarkable findings and treatment. (R. at 875-76.)

Substantial evidence further supports the ALJ's decision on the basis of Plaintiff's own statements. Plaintiff reported that he could prepare his own meals, do laundry, shop and drive on a limited basis. (R. at 243-45.) He could walk for thirty minutes before needing to stop and rest.

(R. at 247.) Plaintiff's mother reported that he lived alone and handled his own personal care. (R. at 251-53.)

The record fails to reveal any "exceptional circumstances" that would lead the Court to disturb the ALJ's credibility determination. Instead, it supports the ALJ's credibility determination. Therefore, Plaintiff's argument that the ALJ erred in failing to give more credit to Plaintiff's statements fails.

**C. The ALJ erred at step five by relying on an incomplete hypothetical to the VE.**

Plaintiff alleges that the ALJ erred by posing a hypothetical to the VE that failed to incorporate all of Plaintiff's mental limitations. (Pl.'s Mem. at 24.) Specifically, the hypothetical did not account for Plaintiff's ability to stay on task with respect to concentration, persistence or pace. (Pl.'s Mem. at 25.) Defendant argues that the hypothetical properly accounted for Plaintiff's ability to stay on task. (Def.'s Mem. at 28.) Plaintiff's argument succeeds under *Mascio*.

An ALJ presents a legally insufficient hypothetical to the VE if the ALJ fails to account for a relevant factor when determining a claimant's RFC. *Mascio*, 780 F.3d at 638. Particularly pertinent for the present assignment of error, "an ALJ does not account for a claimant's limitations in concentration, persistence and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). However, an ALJ can appropriately exclude a concentration, persistence, or pace limitation from the hypothetical if he explains why it does not affect the claimant's ability to work. 780 F.3d at 638. Absent such an explanation, the reviewing court should remand the case. *Id.*

Here, the ALJ erroneously excluded, without explanation, Plaintiff's mental limitations. At step three, the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence or pace. (R. at 13.) When explaining Plaintiff's RFC and analyzing Plaintiff's credibility, the ALJ noted that "the record reflects that [Plaintiff] retains the capacity to take care of some personal needs . . . *albeit at a slower pace* and while accounting for his impairment symptoms." (R. at 19.) (emphasis added). However, these limitations do not appear in the RFC or the hypothetical posed to the VE.

The hypothetical that the ALJ posed to the VE mirrored the RFC that the ALJ formulated. (R. at 63.) In the mental RFC, the ALJ found that Plaintiff could "use common sense understanding to perform instructions provided in oral, written, or diagrammatic form, consistent with a range of unskilled work at or below reasoning level three as those terms are defined in the Dictionary of Occupational Titles." (R. at 14, 20.) The Dictionary of Occupational Titles defines level three reasoning development as the ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and to] [d]eal with problems involving several concrete variables in or from standardized forms."[3] The ALJ's RFC and hypothetical further limited the Plaintiff to only occasional interaction with the general public, co-workers and supervisors. (R. at 14, 63.)

The VE testified that the hypothetical individual described above could perform jobs available in the national economy. (R. at 64.) The ALJ added further physical limitations to the hypothetical with the VE testifying that the further limitations would not diminish the availability of jobs to the individual. (R. at 64-69.) However, upon the addition of nonexertional

---

3 United States Dept. of Labor. Employment and Training Administration. *Dictionary of Occupational Titles*. 4th ed. United States Dept. of Labor, 1991, Appendix C.

limitations, the VE testified that no jobs could accommodate these additional limitations. (R. at 70.) These additional limitations included excessive off-task rates, absenteeism rates and the need to take additional breaks. (R. at 69-70.) However, when making his step five determination, the ALJ considered only the initial hypothetical that included the RFC but lacked the additional mental limitations. (R. at 21.) Because the initial hypothetical failed to account for all of Plaintiff's mental limitations, the ALJ relied on the VE's response to an incomplete hypothetical.

Defendant's argument that the ALJ specifically addressed the ability to stay on task inexplicably ignores the Fourth Circuit's holding in *Mascio*.[4] Defendant contends that by limiting the Plaintiff to the commonsense understanding of essentially simple and routine, that necessarily means that Plaintiff cannot concentrate or stay on task to the extent that he could not remember more complex instructions. (Def.'s Mem. at 28.) But this directly contradicts the holding *Mascio*. There, the Fourth Circuit rejected a similar argument because "the ability to perform simple tasks differs from the ability to stay on task." 780 F.3d at 638. Only a limitation on the ability to stay on task accounts for a limitation in concentration, persistence or pace. *Id.* Restricting the individual to simple tasks or unskilled work does not. *Id.*

The ALJ offered no explanation for why his step three findings of moderate limitations in concentration, persistence or pace did not translate into a limitation in Plaintiff's RFC. The failure to include a relevant factor in the hypothetical, coupled with the lack of explanation for this failure, warrants remand.

---

[4] The Court had previously issued an Order asking the Government to screen cases affected by the holding in *Mascio*. The Court is disappointed that the Government did not take this task more seriously and agree to remand here, as this case clearly falls under *Mascio*.

## V. CONCLUSION

Based on the foregoing analysis, this Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 11) be GRANTED; that Defendant's Motion for Summary Judgment (ECF No. 13) be DENIED; and that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings consistent with this report and recommendation.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge John A. Gibney, Jr. and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia

Date: January 5, 2016